Good morning Judge Warlaw, Judge Van Dyke, Judge Hillman. May it please the court, Tony Sain on behalf of Appellant and Defendants below the County of Riverside and Corporal Richard Francic. If I may, I'd like to reserve three minutes of my time for rebuttal. Yes, please watch the clock. Thank you, Your Honor. The court should reverse the amended judgment here for three reasons. First, under Seventh Amendment principles and because courts must presume that jurors follow the jury instructions that were given. It was an abuse of discretion and plain error for the trial court here to amend judgment to find a constitutional violation, whereas here the jury was instructed that in order to find a deprivation of constitutional rights, they must find that the defendant's acts caused plaintiff's ultimate injury, and the jury here found no such causation. Second, unreasonable force by itself without proximate causation of any injury is not actionable or unlawful. And third, on the record that was produced at trial, because it was uncontroverted that there was no fight between Mr. Stoner and any deputy after he was in custody, after the dog bite was over, because the evidence that was uncontroverted was that the only fight between Mr. Stoner and a deputy was during the arrest. His excessive force claim was barred by the heck doctrine. Now to elaborate on my first point, your honors, this Supreme Court has held in weeks that jurors must be presumed to have followed the jury instructions that were given. And this precept derives itself from a reliance upon the Seventh Amendment, as the Supreme Court stated in Gallick. Under the Seventh Amendment, only juries can decide disputed facts. Here, the jury was instructed at jury instruction number 27, record page 350, that in order to find that the defendant violated, deprived Mr. Stoner of his particular constitutional rights or his legal rights, including a California law battery, the jury had to find that the defendant's acts were the moving force that caused plaintiff's ultimate injury. And here, in response to the question of whether or not defendant's conduct caused Mr. Stoner's harm, the jury answered that question with a firm no. So on that, so counsel, on the verdict form, the judge set out if you answered yes to question two, go to question three. If you answered no to two, stop here, no further questions. Yes, your honor. Doesn't that imply that that's the end of it? Yes, the end of the inquiry was, yes, your honor, the end of the inquiry was the jury's finding of no causation of any injury and therefore the jury stopped answering questions because according to jury instruction 25, if plaintiff had failed to prove any element of their claim, the jury was obligated to enter a defense verdict. By ending their inquiry with the failure to prove causation, the jury rendered a defense verdict, as was entered in the original judgment. Counsel, can you give me an example of something that would be excessive force but wouldn't be proximate, wouldn't meet the proximate cause standard? So, I mean, I'm trying to figure out, like, what, I mean, it could be from this case, but I mean, even just generally, like, what would be excessive force but wouldn't be proximate, but wouldn't proximately cause any injury? Because I think that's the key. It has to not proximately cause any injury. Some of these cases say it caused some injury, but not not compensable injury, right? That's when you get the noddle down, but I'm talking about excessive force that doesn't cause any injury. Yes, your honor. Actually, this court has already addressed that issue in the Mendez case when it adopted or referenced the hypothetical raised by the third circuit in Bodine. And what the Bodine court hypothesized is that you could have officers engaged in an unlawful search or an unlawful seizure, but in the middle of that, theoretically, unlawful conduct, a search without probable cause, a seizure without justification. In the middle of that, theoretically, unlawful conduct, the suspect could grab a gun, point it directly at the officer, and as a result of that intervening action, any officer harm that resulted, where the officers then shoot the suspect, the officers would not be liable for the harm that resulted to the suspect because of the suspect's superseding cause of his own harm. And the court here embraced that in the Mendez case. Now, it's possible that the jury here in analyzing the facts determined that Mr. Stoner was the superseding cause of his own harm. They may have determined that because he fled from police for over 45 minutes, tried to run over a deputy who was on foot, ignored commands to stop, ignored the canine warning, got into a fistfight with a deputy in the field, and then tried to rip the dog's bite off of his legs. The jury here may have concluded that if Mr. Stoner had suffered any injury at all, he was the superseding cause of that injury, which, as this court has found in both White and Mendez and Arnold and Harper, when you break the causal chain, there is no liability that otherwise would result to the defense. Sure, I think we're probably following you on that, but what would the jury, in that circumstance you're talking about, what would the jury have thought merited a yes answer to the first question? If the jury must have reached the conclusion there was something that was excessive, what would they have thought but did not actually cause him any injury? The jury, in following jury instruction number 26, which talks about what is reasonable force under federal law, which was undisputed in this case that the standard for excessive force or unreasonable force under federal and state law was the same, but the jury here was only analyzing the reasonableness of force, not whether or not the reasonableness of force was unconstitutional or unlawful. In fact, on close review of jury instruction 26, the word unlawful or deprivation or violation doesn't appear in there anywhere. Where the concept of unlawful excessive force, excessive force that is unreasonable, that is unconstitutional, where that concept is first introduced is in jury instruction 27, the very next instruction, and it holds that in order to find a violation of the Constitution, the plaintiff had to prove that the Defendant's Act was the moving force that caused plaintiff's ultimate injury. By finding no such causation, the jury, following that instruction, can only be construed to have found that there was no violation of Mr. Stoner's constitutional or legal rights here. Now, it may be that they found it that way because they determined that Mr. Stoner's conduct was a superseding cause of harm. It may be that they found that the excessive force, the unreasonable force occurred after the injury at issue. We don't know. All that we know is that they found a break in the causal chain sufficient enough to determine that there was no constitutional violation here, and therefore, because the trial court amended judgment to disregard that found fact, it was violating the Defendant's and the Appellant's... I just would like to understand your argument a little more precisely. You're saying that the constitutional violation subsumes the causal connection. Is that what you're saying? That it couldn't be... I mean, if you're looking at jury instruction number 26, it says under the Fourth Amendment, a peace officer may use only such force as is objectively reasonable. And so, when the juries answered question one, they said the force was unreasonable for a constitutional violation, but number two, that force that occurred for that unconstitutional violation did not cause Mr. Stoner's injury. No, Your Honor, that's not what I'm saying. You're saying you cannot divide up the constitutional violation in that manner? That's not what I'm saying either, Your Honor. What I'm saying is jury question one does not address whether a violation of law occurred at all. Contrary to what the trial court held, there's nothing in that question that mentions the word constitutional violation, unlawful, or anything like that. Nor is the concept of a violation... It says excessive force, which is in... The concept is in instruction number 26, as a Fourth Amendment violation. No, Your Honor. Jury instruction 26 does actually say violation. It doesn't say deprivation of right at all. A jury reading 26... It talks about the Fourth Amendment, right? Yes, Your Honor, it does, but it doesn't say that unreasonable conduct violates the Fourth Amendment. The concept of violation of constitutional right is not introduced in jury instruction 26. It's introduced in jury instruction 27. And this court, in multiple cases, has held... But if the question number one asks excessive or unreasonable force, and that's the language that's discussed under the Fourth Amendment in jury instruction number 26. Correct. And neither jury instruction 26 nor question one on the verdict form use the words unlawful, unconstitutional, violation, or deprivation. The concept of a violation of right is not introduced until question two, jury instruction 27. And this in Arnold, in Harper, and the Supreme Court has held in Martinez that absent proof proximate causation of an injury, any injury, there cannot be a constitutional violation under section 1983. In fact, this court's model instruction, number 9.8, specifically holds that you must prove causation of some injury, any injury, to establish a constitutional violation. And here, the jury no violation of Mr. Stoner's constitutional or legal rights. Additionally, it's important to note that the amended judgment does something that's a little bit novel in that it creates an inconsistent verdict, whereas the original verdict and the original judgment was consistent. The amended judgment transforms the judgment for defendants on the 1983 claim into a judgment for defendants on the 1983 claim. It's also worth noting that the finding of fact that the court, that the jury reached under the Gallick and under the 7th Amendment, this trial court committed plain error by ignoring that finding of fact. A court is not permitted to disregard a jury's factual findings, and it's a violation of the 7th Amendment to do that. This court held in the Site 350, F3, 967, that an abuse of discretion or plain error constitutes a judgment that ignores the facts as found. Well, the only construction of this verdict form, assuming a jury follows the instructions given, is that this jury found no constitutional violation. And so for this court to go back and amend judgment to find a constitutional violation where the jury found none is a clear violation of the 7th Amendment and a clear deviation from the Supreme Court's mandate in weeks. Now turning additionally, another basis of relief that the appellants have argued is that Mr. Stoner's claim was barred by the Heck Doctrine. Mr. Stoner pled guilty to violent resistance to a peace officer who was lawfully engaged in the performance of his duty under California Penal Code 69. The factual basis of that plea was that Mr. Stoner was fighting with a deputy in that field. He was resisting arrest by Deputy Kerr, right? Yes, Your Honor, on that basis. Not that he was doing anything with respect to Deputy Stoner. That is true. I'm sorry, I think you meant Deputy Franzik, Your Honor. That is true, Your Honor. However, the issue is whether or not Mr. Stoner's factual basis of his excessive force claim materially contradicts, undermines, or impugns the factual basis for his conviction. Now the factual basis for Mr. Stoner's excessive force claim is that when he's out there in that field, he's not resisting anybody. He's not a threat to The judge, in denying defendants motion for summary judgment, theorized that maybe when he pled guilty to the PC-69, he was talking about a post-bite fight, a post-cuffing fight. Well, the undisputed evidence at trial showed that there was no such post-bite fight. There was no post-cuffing fight with any deputy, which means the only fight that could have formed the factual basis of his conviction was the mid-bite fight, the fight during the arrest. And so for Mr. Stoner, it could also be that he was fleeing. He was fleeing Huer and resisting Huer, even before the dog got to him. That's not the factual basis that he stated in his allocution, as is indicated at record pages 652 through 659. The factual basis of his plea is that he got into a fight with Huer, and the evidence presented at trial showed that the only time he got into a fight with Huer was mid-bite. And because of that, because the factual basis of his excessive force claim directly contradicts and materially and fatally contradicts the factual basis of his guilty plea, his excessive force claim should have been barred by the Heck Doctrine. In light of these facts, your honors, in light of the fact that the court ignored the jury's factual finding of no constitutional violation, in violation of the mandate of the Supreme Court in weeks, in violation of the Seventh Amendment, and in light of the fact that plaintiff's claim was heck barred based on the evidence produced at trial, the defendants and appellants here are respectfully requesting that this court reverse the amended judgment and reinstate the original judgment in favor of the defense. Thank you. Thank you, counsel. Mr. Dunn? Thank you very much, your honor. I'd like to begin by addressing the question that Judge Van Dyke proposed, which is how can you have an active excessive force on the one hand and not have an injury on the other hand? And when we look at the answer to that question, we see that the facts in this case are supported by several inferences, some of which are made on the basis of the district court's reconciliation of the jury's verdict. Now, I want to hear your answer to that, but do you think there can be, outside this case, do you think there can be an excessive force, an active excessive force that is not a constitutional violation because it didn't proximately cause? Do you think, like, theoretically, is that possible? Yes. Okay, so theoretically it's possible, but your position is that on the facts of this case, that couldn't happen? Well, actually, your honor, my position in this case is that the jury's verdict showed that excessive force was used. The jury simultaneously held that the use of excessive force in this case was not the moving force behind the plaintiff's injuries. So, in effect, what the jury said was, yes, unreasonable force was used, but no, that use of, that admitted use unreasonable force was not the moving force behind his injuries. So, how did these get reconciled? We have to first consider the fact that this court, the Ninth Circuit, has repeatedly held that in cases in which a constitutional violation is proved, but there are no damages that are proved, that an award of nominal damages is to be given. So, counsel, same question that I asked Mr. Sain, and on that fact, the jury wasn't given an opportunity to get to damages because the verdict form instructed them to stop here and tell the court that you've reached a verdict. That's correct. And, in effect, what the jury was saying was that they did not feel that Mr. Stoner was entitled to compensatory damages. No, they said there was no causation and they didn't even get to the issue of damages. They weren't allowed to get to damages. Specifically, as it relates to that inquiry, when the jury made the determination that excessive force was used, you have to understand the instructions that were given to the jury with regard to how they could find that. They were specifically told, contrary to counsel's argument, in jury instruction number 26, a seizure of a person is unreasonable under the Fourth Amendment if the police officer uses excessive force in making the lawful arrest. They also determined that, based on jury instruction 27, that in order for the use of excessive force to occur, they had to have proven by a preponderance of evidence that, and again, I'm referring to jury instruction 26, the officer used more force than necessary. I apologize. I went to 27. I'm talking about 26. Forgive me, Ron. When we think about that, we got to think about how did they get to the determination, the threshold determination that excessive force was used, if they did not honor the instructions of the court. At the outset, when the court is talking about the 1983 claim, it states that this claim is brought under the authority of 1983, specifically with the circumstances that were presented to this particular deputy. There is no way that they could have found that question one was to be answered yes if they didn't find excessive force, but there's one factor. Okay, all right. Let me ask you about that. Why couldn't the jury here have thought, you know, they have these eight factors that are laid out, right, as far as the excessive force, and one of those factors, number two, is whether the plaintiff posed an immediate threat to the safety of the officer, so why couldn't the jury have thought, I don't think that the officer stoner should have released the dog when he did because when he released the dog, the person was just fleeing. I might get the names wrong here, but the person was just fleeing, so the officer prematurely released the dog, and so that was excessive. That was excessive force, but the jury in finding that it wasn't a moving force or finding that there wasn't proximate causation could have concluded that by the time the dog caught up with the person, now the person's fighting with the other deputy, and at that point, the force the dog is applying is not excessive at all at that point, so therefore, releasing the dog early is sort of a no harm, no foul. It definitely was excessive, but it didn't end up causing the person's injuries, so why couldn't, I think you just said there's no way the jury could have found excessive force but not causation, but it seems like the circumstances just gave is one way they could have done that. Well, your honor, I think that when we look at the factual record, this is an event that was a protracted event. It took place over several minutes. The dog was released, and there was an intense struggle on the ground after the dog was released. The jury may well have concluded that the ultimate injury in this case was Mr. Stoner's very severe leg injury. It was a personal injury. We showed pictures that actually showed the dog had bitten all the way to the bone of Mr. Stoner. There was also disputed factual information as to what happened when they were fighting on the ground. Mr. Stoner said he was laying passively, and the dog was biting him. We had a witness, Tom Borey, who also said that Mr. Stoner was not resisting at any time, and the dog was still biting him, but you have the deputies that were saying that the reason why the dog kept biting Mr. Stoner was because Mr. Stoner was fighting off the dog. The dog kept biting him and biting him and biting him because he kept fighting back against the dog. That's the supervening injury theory. I get that from your briefs. I think we all get that, and under that theory, then he wouldn't be the moving, the proximate cause because he was a supervening cause of his injury. I get that. Let's assume for a second that that is one way the jury could have reviewed this case. Let me ask you, what about what I just said, where the jury says he released the dog too early, that was excessive force, but it didn't actually cause the guy's injury because by the time the dog catches up with him, the guy is literally fighting with another police officer. By that point, I guess you'd call it being lucky by the officer, but the dog actually became necessary by the time the dog actually shows up on the scene. Why couldn't the jury have done that? If it could have done that, and we've got these different theories that the jury, we don't know what the jury thought, but if it's different theories, what do we do with that? The question is, if they found that excessive force was used under the court's analysis by simply deploying the dog, we have a I think you just told me, counsel, that not necessarily every excessive force is a constitutional violation if it doesn't proximately cause the injury. Didn't you say that earlier or did I mishear you? Let me point the court to two Ninth Circuit opinions that may be very instructive. I'm going to talk to about George versus Long Beach. That was a case in which the officer made a warrantless entry into the home and then shot the plaintiff. But the jury in that case found a constitutional violation. They didn't just find excessive force, they found a constitutional violation. Yes, and the constitutional violation was occasioned by the warrantless entry in that case. The jury did not award the plaintiffs any damages in that case because they said that the plaintiff was not entitled to recover anything for that. However, the constitutional violation, which was decided by the court, predicated upon the warrantless entry, the constitutional violation still stood. So even though the plaintiff did not suffer any cognizable injury, he didn't get compensatory damages, there was still a constitutional violation that entitled that plaintiff to the award of nominal damages. It seems to me, counsel, those are a little bit like trespassing. These unlawful entry cases are kind of like trespass, right? If somebody trespasses at my house and doesn't do any harm, doesn't do anything, I'm not even there, they just trespass, they don't steal anything, I'm still injured by the trespass. So I feel like those cases kind of have, you sort of have like a nominal injury just by somebody trespassing in your home. And it's true if it's the police officers without a warrant doing that. But here, if we're talking about somebody releasing the dog and that was excessive force, but the dog doesn't, this seems to me would be more like firing a taser at somebody and completely missing them and saying, you shouldn't have fired a taser, but you didn't hit them, so it didn't really cause any injury. There's no way, I understand the court's opinion, but in terms of what the court, the district court had to do with this seemingly inconsistent verdict, is the court is mandated to find a way to try to harmonize it, if at all possible. So the analysis that the federal, the district court undertook was to determine how can these two things harmonize, how can they exist together. So the analysis that the court came up with, which is completely supported by the factual record, is that the act of deploying the use of the dog was at some point unreasonable. It was at some point determined to be the cause of excessive force. It was a fourth amendment violation occurs if there's excessive force, that is clearly set forth in instruction number 26, but what is the ultimate injury? Question two was, if you answered question one yes, was Corporal Francix's use of excessive or unreasonable force, the moving force, in causing harm to Scott Stoner? Once again, question two was, and I quote, was Corporal Richard Francix's use of excessive or unreasonable force, the moving force, in causing harm to Scott Stoner? So when we look at those two questions, question two literally assumes the finding of excessive or unreasonable force, but they then ask, was it the, quote, moving force behind the harm to Mr. Stoner? And then you have a situation where the harm to Mr. Stoner very easily could have been the very severe dog bite. It could have been the fact that he'll never walk normally again. That's the harm to him, but he could have caused that harm to himself by fighting off the dog, and by doing things that by resisting the dog, which caused him to be further bitten. So therefore, even though the dog, the dog's deployment constituted excessive force, that deployment was not the moving force behind his severely damaged leg. Rather, Mr. Stoner was a moving force behind his severely damaged leg, and that way those verdicts can be, those two questions can be harmonized. I agree with that. Excuse me, may I ask a question? I haven't asked anything yet. Counsel, how would you define moving force in that second jury question? That is a great question, Your Honor, and the way that I would define it is, what caused my client's leg to be destroyed? What was the causal factor that caused his leg to be mangled? So the moving force behind the mangling of his leg could conceivably have occurred after the excessive force was used in the deployment of the dog. Now, the excessive force part could have caused some injury to your client, but the moving force behind his complete devastation of his leg, which there is testimony, as I understand it, that ordinarily a dog bite doesn't cause that much damage, an ordinary dog bite. That is correct. So the thing that really caused the damage, the primary thing that caused the damage was his continued resistance and fighting with Officer Hewer as the dog was biting him. That is correct, Your Honor. Okay, thank you. So I'll ask you the follow-up question I was going to ask you before. If your client got, if what Judge Wardlaw was saying is true, and so part of the injury, the extents of the injury, the most of the injury, say, was caused by Mr. Stoner's own actions, so then that would mean that Mr. Stoner was the moving force, right? But I think, is your theory then that if a little bit of the injury, the initial part or something, was caused because of what the jury found as excessive force, that's still enough to support nominal damages? Is that your theory? Yes, Your Honor. If that's your theory then, I thought that was your theory, if that's your theory, what do we do with Jury Instruction 27 that said, that told the jury that there was not a constitutional violation, that he was not deprived, that Mr. Stoner was not deprived of any rights under the Constitution unless it was the moving force? That seems inconsistent with what you're saying. Well, the question is how did they define the injury? The moving force behind the injury could have been the severity of the dog bite. You see, in reconciling these, you have two very vague terms. In question number two, it says, was Corporal Forensic's use of excessive or unreasonable force, the moving force, in causing harm to Scott Stoner? Now, what is the harm that he was caused? It's vague. We have to leave that up to the, we don't know what the jury determined that harm was, but what is that? It's vague, and when you also look at question, or the Jury Instruction 27. Mr. Dunn, Mr. Dunn, before you get off of that, and go to that instruction, just yes or no, was there a nominal damage instruction? No. Thank you. Now, I've been asking some questions. Can I just briefly address the heck issue? Yes. Specifically, this court has held in Hooper that in order for there to be a inconsistency between a guilty plea, the defendant has a burden of proof to show that they could not have existed together. This is a protracted event. It goes over several instances. It wasn't Corporal Forensic that Mr. Stoner pled guilty to resisting. It was Corporal, it was Deputy Cure, and the very clearly supports the inference that after he was completely subdued, after he was handcuffed, the dog kept biting him, and for those reasons, the testimony of Tom Borey renders the argument that heck is going to bar this case inconclusive and ineffective. You can clearly say, based on the factual record, that Mr. Stoner resisted during the same course of events. He resisted Deputy Cure, but that resistance was not inconsistent with his plea because it could have occurred at a different time and at a different place than the time in which the dog bit Mr. Stoner, and that is clearly reconciled by this court in the case of Hooper. Which is repeatedly cited in our moving papers. And finally, I'd just like, on the last point, to clarify that in terms of the jury instruction 27 that has caused so much confusion, the way that it is worded states that the plaintiff must prove by a preponderance of evidence that the acts were so closely related to the deprivation of a particular constitution or legal right as to be the moving force that caused the ultimate injury. That's what's in jury instruction 27. The ultimate injury goes to the jury in the form of harm. Was the accessible or unreasonable force the moving force in causing harm to Mr. Stoner? So when you have the concept of ultimate injury, which is not really defined, and you also have the concept of harm, which is not really defined, it lends to the conclusion that the jury must have believed that the harm and the injury were the severe physical injuries that Mr. Stoner suffered after the whole incident was over. Therefore, the court's effort in reconciling these two questions was correct. One last question, if you might embellish me, Judge Worley. These jury instructions, it sounds to me like you're saying the jury instructions left some things unclear. Did you oppose the jury instructions? I did not, Your Honor. I did not, and I believe that based on the jury instructions and the way that they are, some inference has to be given in favor of the jury's determination. They can be harmonized, and they can be harmonized if the concept of the use of excessive force, the constitutional violation, and the deployment of the dog, yet Mr. Stoner being the intervening or supervening cause for his very severely injured leg. You have a lot of testimony that his leg would never ever look like that normally, that dogs don't do this to him, that Corporal Forensic himself testified he's never seen this happen before. This is not what he would have expected to have happened, and it happened because Mr. Stoner kept fighting the dog. All right, thank you, counsel. Ms. Girod, did Mr. Stain have any time left? Judge. You say it again. She didn't hear you. No, Judge. All right, then I'm going to submit this case and the argument today, and the Stoner v. Bure and Brancic County of Riverside will be submitted, and this court will take a 10-minute recess before the next oral argument. Thank you. Thank you, Your Honor.
judges: Wardlaw, Hillman, Vandyke